# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG, S.A.,<br><br>      Plaintiffs,<br><br>v.<br><br>BOX, INC.,<br><br>      Defendant. | Civil Action No. 1:17-cv-754-LY |

## DEFENDANT BOX, INC.'S MOTION TO TRANSFER VENUE
## TO THE NORTHERN DISTRICT OF CALIFORNIA

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................2

    A. The Vast Majority of Key Witnesses and Evidence Are Located in or Near the Northern District; None is in the Western District ..........................................2

        1. Box's Relevant Evidence is All in the Northern District............................2

        2. Numerous Key Third Party Witnesses Reside in the Northern District; None Reside in the Western District.............................................4

        3. Uniloc Has Several Strong Ties to California, but None to This District........................................................................................................4

III. THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT............5

    A. This Action Could Have Been Brought in the Northern District............................5

    B. The Private Factors Weigh in Favor of Transfer. ....................................................6

        1. The Sources of Proof Are Most Easily Accessed in the Northern District........................................................................................................6

        2. Key Witnesses Are Within the Subpoena Power of the Northern District........................................................................................................7

        3. Willing Witnesses Can Attend Trial More Easily in the Northern District than in This District .......................................................................9

    C. The Public Interest Factors Also Weigh Strongly in Favor of Transfer ................10

IV. CONCLUSION....................................................................................................................10

Defendant Box, Inc. ("Box") respectfully moves to transfer this action to the Northern District of California ("Northern District") pursuant to 28 U.S.C. § 1404(a) because the Northern District is clearly more convenient for the parties and witnesses in this case than the Western District of Texas (the "Western District").

## I.   INTRODUCTION

Plaintiffs' filing this case in the Western District is classic forum shopping. In March of 2017, Plaintiffs filed an identical case against Box in Eastern District of Texas. Box moved to transfer that case to the Northern District because venue was improper in the Eastern District and the vast majority of relevant witnesses and evidence are located in the Northern District. Before the court could rule, Uniloc voluntarily dismissed that case and re-filed it here in the Western District—where venue is admittedly proper but neither of the parties is headquartered—to avoid transfer to the Northern District. Plaintiffs' tactics have forced Box to again move to transfer, now for the second time, to the Northern District.

Box's Redwood City headquarters, located in the Northern District, is the strategic center of its business. Box designed and developed the accused product identified in Plaintiffs' Complaint at its Northern District headquarters. Box's management, research and development, and engineering for that product are located in Redwood City, California, in the Northern District, and all of Box's executives and witnesses with the most knowledge of the accused product work in Redwood City. Even the former Box employees in charge of the initial product design, development, engineering, and user experience for the accused product are all located in the Northern District. In contrast, none of Box's functions for the accused product are managed out of its Austin, TX office, and indeed Box has never performed any product design or development work in that office.

Additionally, Plaintiff Uniloc USA, Inc. ("Uniloc") maintains a significant presence in California.  Uniloc was founded in California and still maintains its headquarters there, and Uniloc's CEO and CFO are based in California.  Indeed, in a recent patent litigation between Box and Uniloc, Uniloc requested that these two executives be deposed in California, not Texas.  And all of Uniloc's Texas-based presence (which is miniscule compared to Box's presence in the Northern District) is in the Eastern District, not the Western District.

The Federal Circuit has repeatedly held that where "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  Accordingly, this case should be transferred to the Northern District.

## II.     STATEMENT OF FACTS

### A.     The Vast Majority of Key Witnesses and Evidence Are Located in or Near the Northern District; None is in the Western District

#### 1.     Box's Relevant Evidence is All in the Northern District

Box's's corporate headquarters is in Redwood City, California.  Decl. of Joely Urton ("Urton Decl.") ¶ 3.  Box's CEO, CFO, COO, Chief Marketing Officer, and other senior financial, technical, marketing, and creative executives are all based in Redwood City, where all of the most significant engineering, financial, and marketing decisions are made.  *Id.* ¶ 4.  Roughly 900 Box employees work in its headquarters in the Northern District.  *Id.* ¶ 5.

All of the Box employees most knowledgeable about the accused product are located in the Northern District.  The product identified in Uniloc's Complaint, Box Sync, was designed and developed at Box's headquarters in the Northern District.  *Id.* ¶ 6.  All of the technical, marketing, and sales functions related to this product are managed out of Box's headquarters in the Northern

District. *Id*. The Box employees with the most knowledge regarding the development, function, operation, marketing, and sale of Box Sync all work in the Northern District. *Id.* ¶¶ 7-10. Likewise, all of the documents relating to this product, including technical documentation, computer source code, sales, marketing, financial and other business information, all hard copy documentation related to the accused product, plus the master copy of the accused product itself, are located in Box data centers in the Northern District. *Id.* ¶ 11.

On the other hand, none of the design or development of any Box product or service has ever taken place in Box's Austin office. *Id.* ¶ 14. Indeed, the vast majority of the employees in Box's Austin office are entry level customer success or sales workers. *Id.* ¶ 13. Significantly, all functions of the Austin office are managed out of Box's headquarters in the Northern District of California. *Id.* ¶ 15. None of the Box executives or employees most knowledgeable regarding development, function, operation, marketing, or sale of the accused Box product work or reside in Texas. *Id.* ¶ 16. And all of the electronic documents generated in the Austin office are located in Box data centers in the Northern District. *Id.* ¶ 11. Underscoring Box's lack of connections to this District, Box has never availed itself of this forum as a Plaintiff. Declaration of Seth B. Herring ("Herring Decl."), ¶ 2.

Indeed, Uniloc originally filed this case in the Eastern District of Texas. *See Uniloc USA, Inc. et al. v. Box, Inc.*, Case No. 2:17-cv-00173-JRG (E.D. Tex.) ("East Texas Case"). On June 2, 2017, Box moved to transfer that case to the Northern District or dismiss it because venue in the Eastern District was improper. East Texas Case, Dkt. No. 23. Before the court could rule on Box's motion to transfer or dismiss, Uniloc voluntarily dismissed the East Texas Case and refiled it in this District. East Texas Case, Dkt. No. 36.

2.  Numerous Key Third Party Witnesses Reside in the Northern District; None Reside in the Western District

As discussed, the accused product in this case was designed and developed at Box's headquarters in the Northern District. None of the members of the initial development team remain at Box, but all three still reside in the Northern District. The original technical lead for this product, responsible for managing and overseeing its development, currently works for Apple, Inc. in the Northern District. Urton Decl., ¶ 17; Herring Decl., Ex. A. Likewise, the prior product manager for the accused product, responsible for rebuilding the product from scratch and prioritizing all engineering and user experience requirements, currently works for Checkr, Inc. in the Northern District. Urton Decl., ¶ 17; Herring Decl., Ex. B. Finally, the prior VP of Engineering who led and scaled engineering efforts for the accused product works for PayPal Holdings, Inc. in the Northern District. Urton Decl., ¶ 17; Herring Decl., Ex. C. None of these key third party witnesses reside in Texas.

3.  Uniloc Has Several Strong Ties to California, but None to This District

Uniloc's ties to California are substantial. As recently as December 10, 2013, Uniloc USA represented its principal place of business to be Irvine, California. *See, e.g.*, Case No. 6:13-cv-00942, Dkt. 1, ¶ 1. Last year, Uniloc successfully obtained transfer of another case to California in view of its "headquarters" in Irvine, California, where, "tracing . . . back to its origins," Uniloc USA claimed it "was headquartered." *Uniloc Luxembourg, S.A. v. Broderick*, Case No. 4:15-cv-00706-RC, Dkt. 16 (requesting transfer to C.D. Cal.); Dkt. 21 (Order transferring case to C.D. Cal.). Key Uniloc executives and employees, including its CEO and CFO, are based in California. Herring Decl., Exs. D-F. And significantly, just a few months ago in a recent patent litigation between Box and Uniloc, Uniloc requested that two out of its three Rule 30(b)(6) designees – its CEO and CFO – be deposed in California. *Id.*, Ex. G. In contrast, <u>all</u> of Uniloc's Texas-based

sources of proof are in the Eastern District, not the Western District.  East Texas Case, Dkt. No. 33, p. 4 ("Uniloc's sources of proof are in [the Eastern District].").

### III.  THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT

Transfer is appropriate "[f]or the convenience of parties and witnesses, in the interest of justice" to any district "where it might have been brought." 28 U.S.C. § 1404(a).  The Fifth Circuit considers "private" and "public" factors in determining whether transfer under Section 1404(a) is warranted, the private factors being "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive," and the public factors being "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").  The moving party need *not* show "that the transferee forum is far more convenient," *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014), and the plaintiff's choice of forum is not a factor in this analysis. *In re Nintendo,* 589 F.3d at 1200.  The facts in this case warrant transfer to the Northern District.

####    A.  This Action Could Have Been Brought in the Northern District.

Under the patent venue statute, an action for "patent infringement may be brought in the judicial district . . . where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  Because Box sells the accused products in the Northern District and maintains its headquarters there, this suit could have been brought in the Northern District.  Urton Decl., ¶¶ 3, 6.

**B.     The Private Factors Weigh in Favor of Transfer.**

1.     <u>The Sources of Proof Are Most Easily Accessed in the Northern District</u>

Box, third party, and even Uniloc sources of proof—including material witnesses and critical evidence—are far more easily accessed in the Northern District than in this District.

**Box's Sources of Proof**. <u>All</u> of Box's sources of proof in this action are located in the Northern District, strongly supporting transfer. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (because "the bulk of the relevant evidence usually comes from the accused infringer . . . the place where the defendant's documents are kept weighs in favor of transfer to that location."); *see also Groupchatter LLC v. Landis + Gyr Techs., LLC*, No. 6:15-cv-886 JRG-JDL, 2016 WL 541516, at *2 (E.D. Tex. Feb. 11, 2016) (same). Box maintains its company headquarters in the Northern District, developed the accused product there, manages all of its operations there, its employees likely to have knowledge and all of its relevant hard-copy and electronic-copy documents are based there, and all relevant documents, source code, and even the accused product itself are stored on servers located there. Urton Decl. ¶¶ 6-11. The inconvenience to Box of litigating this case in the Western District of Texas instead of the Northern District of California is further underscored by the fact that Box has never chosen to commence a lawsuit in this District. Herring Decl., ¶ 2.

**Uniloc's Sources of Proof**. Uniloc's former headquarters are in California, where its CEO and CFO are based. The remainder of Uniloc's sources of proof is in the Eastern District – none are in the Western District. Even if some weight is afforded to Uniloc's presence in the Eastern District of Texas, the ease of accessing Uniloc's sources of proof cannot outweigh the ease of accessing Box's sources of proof in the Northern District, particularly here, where Uniloc only purchased the patent-in-suit shortly before initiating its litigation campaign and its documentary evidence is likely to be minimal. *See Chrimar Sys. v. Juniper Networks, Inc.*, No. 6:15-CV-630,

2016 WL 126936, at *3 (E.D. Tex. Jan. 11, 2016) (finding that "this factor weighs in favor of transfer," despite plaintiff's office in the Eastern District, because "the Court must also acknowledge that 'the bulk of relevant evidence usually comes from the accused infringer'"). Indeed, Uniloc acquired the asserted patent in February 2017, just weeks before it filed the East Texas Case. Herring Decl., Ex. H. And in a recent prior patent litigation between the parties, Uniloc only produced 21 documents totaling roughly 1,500 pages, almost all of which consisted of the publicly-available patents-in-suit and their file histories, whereas Box produced nearly 1,900 documents totaling over 24,000 pages, in addition to its source code (which Uniloc reviewed in the Northern District). *Id*. ¶ 11.

**Third Party Sources of Proof**. None of the three members of the initial technical team responsible for overseeing the initial development, functionality, and user experience of the accused product are current Box employees, but all three still reside in the Northern District. Their presence in the Northern District strongly favors transfer.[1]

2. <u>Key Witnesses Are Within the Subpoena Power of the Northern District</u>

This factor also strongly favors transfer because the Northern District has absolute subpoena power over key potential involuntary witnesses in this case: former Box employees with knowledge of the accused products, and Uniloc executives.

First, because Box designed, developed, and commercialized the accused product at its headquarters in the Northern District, "[i]t is foreseeable that a number of [Box's] former officers

---

[1] The inventors and prosecuting attorneys of the patents-in-suit appear to reside in New York and Pennsylvania. These persons, and any sources of proof they may have, are not located close to this District, rendering access to them and their documents equally inconvenient as between this District and the Northern District. *See Genentech*, 566 F.3d at 1345 (finding that the difference in ease of accessing evidence located in Washington, D.C. from the Eastern District of Texas and the Northern District was minimal).

and employees, many of whom likely reside in or near [Box's headquarters], may be called upon to testify." *See Kleiner v. Southwest Airlines Co.*, No. 5:08-cv-218, 2008 WL 4890590, at *4 (W.D. Tex. Nov. 4, 2008). And in fact, all of the key former Box employees who developed the accused product still live in the Northern District, and would thus be within the subpoena power of that court. In stark contrast, no relevant third party witnesses are within this Court's subpoena power. This is persuasive evidence that transfer is appropriate. *See Affinity Labs. of Tex., LLC v. BlackBerry Ltd.*, No. 6:13-CV-362, 2014 WL 10748106, at *5 (W.D. Tex. June 11, 2014) ("[T]his factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.") (quoting *Volkswagen II*, 545 F.3d at 316).

Second, the Northern District would have absolute subpoena power over the Uniloc employees that reside in California, whereas the Western District would not. *See TracBeam, LLC v. Apple, Inc.*, No. 6:14-CV-680, 2015 WL 5786449, at *4 (E.D. Tex. Sept. 29, 2015) ("'Absolute subpoena power' is subpoena power for both depositions and trial."). As explained above, Uniloc has key personnel, including its CEO and CFO, who either live or regularly conduct business in California. To the extent Uniloc does not call these witnesses at trial, they would be subject to the absolute subpoena power of the Northern District under Federal Rule of Civil Procedure 45(c)(1)(B)(i).

Accordingly, the great majority of the key witnesses are within the absolute subpoena power of the Northern District, but not this District. In contrast, there are no known witnesses within this District's absolute subpoena power but outside that of the Northern District who will likely need to be subpoenaed. Therefore, this factor weighs heavily in favor of transfer. *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013) ("Transfer is favored when

a transferee district has absolute subpoena power over a greater number of non-party witnesses [than the transferor district].").

### 3. Willing Witnesses Can Attend Trial More Easily in the Northern District than in This District

The location of willing witnesses also strongly favors transfer. "The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343 (internal quotation marks omitted). It is an "'obvious conclusion' that it is more convenient for witnesses to testify at home and that . . . additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment, family, and community." *Volkswagen II*, 545 F.3d at 317.

Here, all of Box's likely U.S. witnesses, including Matthew Self, Jeff Mannie, and Joely Urton, are located in the Northern District. Urton Decl. ¶¶ 8-10. On the other hand, no known Box witnesses or third party witnesses are located in Texas, no Uniloc witness is located in this District, and a number of high-ranking Uniloc officials reside in California. And perhaps most notably, key third party witnesses are located in the Northern District as well, strongly favoring transfer. *See On Semiconductor Corp. v. Hynix Semiconductor*, Inc, No. 6:09-cv-390, 2010 WL 3855520, at *6 (E.D. Tex. Sept. 30, 2010) ("Typically, the convenience of third-party witnesses is given greater weight than the convenience of party witnesses.").[2]

Where, as here, "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff," the Federal Circuit has held

---

[2] Other third party witnesses, such as the named inventors and prosecuting attorneys of the asserted patent "will be traveling a great distance no matter which venue the case is tried in." *Genentech*, 566 F.3d at 1345; *Chrimar*, 2016 WL 126936, at *4 ("The convenience of the named inventors, being located in Michigan, is neutral.").

that "the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198. Accordingly, this factor weighs heavily in favor of transfer.

### C. The Public Interest Factors Also Weigh Strongly in Favor of Transfer

The first, third, and forth public interest factors are neutral in a patent case such as this. *See Dataquill Ltd. v. Apple Inc.,* Case No. 13-CA-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. June 14, 2014). The second public interest factor, however, strongly favors transfer.

The Northern District has a powerful interest in this case because Box is headquartered and developed the accused product there, its intended witnesses all reside there, and its reputation and conduct are expressly implicated by this case. *Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364, -365, -577, -578, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding local interest factor weighs in favor of transfer when defendants are headquartered, develop the accused products, and employ a large number of people in the transferee venue).

In stark contrast, the Western District has no connection to this case other than the fact that Box has an office here. Neither of the parties is headquartered here, and Uniloc has no employees here. Indeed, Uniloc initially filed this case in the Eastern District, and only filed suit here after it became clear that venue was improper in the Eastern District. Accordingly, the local interests in the Northern District are far greater than in this District, and this factor weighs in favor of transfer. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

**Meet and Confer**. Counsel for the parties conferred by phone on October 19, 2017. Plaintiffs oppose the relief Box seeks.

### IV. CONCLUSION

Where, as here, "the plaintiff has virtually no connection to the chosen forum, a plaintiff's choice is entitled to little deference." *Via Vadis, LLC v. NETGEAR, Inc.*, 1:14-cv-809-LY, 2015

WL 10818675, at *3 (W.D. Tex. Jul. 30, 2015).  Because the Northern District of California is a more convenient venue, Box respectfully requests that the Court transfer this action.


DATED:  October 19, 2017

        Respectfully submitted,

        */s/ Katherine P. Chiarello*
        Katherine P. Chiarello
        Texas State Bar No. 24006994
        katherine@wittliffcutter.com
        John D. Saba, Jr.
        Texas State Bar No. 24037415
        john@wittliffcutter.com
        **WITTLIFF | CUTTER | AUSTIN, PLLC**
        1806 West. Ave.
        Austin, Texas 78701
        Telephone: (512) 960-4524
        Telecopier: (512) 960-4869


        *Counsel for Defendant BOX, INC.*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 19, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notifications of such filing to the following:

James J. Foster (Pro Hac Vice)
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
Email: jfoster@princelobel.com

Edward R. Nelson, III
Texas State Bar No. 00797142
ed@nelbum.com
**NELSON BUMGARDNER PC**
3131 West 7th Street, Suite 300
Fort Worth, TX 76107
Tel: (817) 377-9111
Fax: (817) 377-3485

                                                    */s/ Katherine P. Chiarello*
                                                    Katherine P. Chiarello